United States District Court
Southern District of Texas
FILED

OCT 1 1 2005

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| VS. | § | CRIMINAL NO. B-83-777 |
| HUMBERTO MIRELES | § | |

### MOTION TO DISMISS INDICTMENT ON SPEEDY TRIAL

The defendant, HUMBERTO MIRELES, through his attorney, Jaime M. Diez, moves to dismiss the indictment for a violation of his right to speedy trial, pursuant to 18 U.S.C. 3161. In support of this motion, he shows the following:

### I.

On September 29, 2005 Defendant was arrested by a Special Agent, Immigration and Customs Enforcement at his residence. He was arrested on an arrest warrant issued on November 22, 1983. (See Appendix 1) On November 22, 1983 a grand jury issued an indictment against Defendant charging him with conspiracy to make false statements on Birth Certificates, in violation of Title 18 United States Code Section 371 and 1001; with conspiracy to procure or attempt to procure evidence (for certain persons) of U.S. Citizenship, in violation of Title 18 United States Code Section 371 and 1425(b); and to counts of making false statements on Birth Certificates in violation of Title 18 United States Code Section 1001 and 2. (See Appendix 2).

After the indictment was issued, for twenty-three years there were no attempts made by U.S. authorities to execute this arrest warrant. At the time Defendant was indicted he was residing in Mexico. However, during that time he was living in Matamoros, but had a border crossing card issued by U.S. immigration in Harlingen and he would come almost on a daily basis to visit his

family who was residing in Brownsville. Defendant is a Dr. in Mexico and his practice was in Matamoros. In addition, Defendant obtained a Texas Drivers License and was actively and openly involved in his children's education. He was PTA President of his children's school. (See Appendix 3).

In 1996, his wife became a Naturalized U.S. Citizen and she filed an application at the Harlingen District Office on behalf of Defendant to adjust his status to that of a Lawful Permanent Resident ("LPR"). For the past nine-years, Defendant has appeared at least once every year to immigration to renew his employment authorization and travel abroad document. (See Appendix 4). In addition, during this same period of time Defendant worked for close to seven years (From 1996 to 2002) for the Valley Regional Medical Center in the records department. (See Appendix 5).

On or about 1998, Defendant appeared with his wife for the first time at the immigration office in Harlingen, Texas to review his pending application to adjust status to an LPR. At that interview, he was told by the examiner that everything looked approvable, but that they could not give him his card at this time because there was a problem with the birth certificate of his children. The officer told Defendant that he needed to take care of this problem and then they would schedule him for another appointment. Defendant was not arrested. After his first meeting with immigration, Defendant hired the services of attorney Moises Vela and through him he filed suit in Austin with the Texas Department of Health ("TDH").

In *partera* cases the practice has been for government investigators to meet as part of their plea agreement with the accused *parteras* so that they could provide the government with the names of those persons who according to these *parteras* were not born in Texas. Once these names were obtained from these *parteras*, these names were then turned over by immigration to the TDH so that they would no longer issue these birth certificate ("freeze the certificate"). Then, whenever the

person wanted to obtain a copy of his/her birth certificate he/she was told that they could not give it to them because there was a report that it was a fraudulent document. After a request for a birth certificate is declined, TDH sends a letter to the requester informing them of their right to contest this issue in Austin. The government does not notify these persons about the possibility that their birth certificates were obtained fraudulent. In other words, most people do not find out that the government has frozen their birth certificates until many years later when they are older and they need to get a copy of their birth certificate. For these reasons, it is not uncommon that by that time a person learns that their birth certificate is frozen, the *partera* and their parents are dead.

On September 24, 2001, after four trips to an Austin Court, where Defendant appeared at each one of those hearings with his attorney, and where the Government had an opportunity to present their evidence as to why they were not issuing Defendant's two children birth certificate, the Court found that the Government had not proven its case and order the State Registrar to issue birth certificates to both of Defendant's children. (See Appendix 6). During this time, Moises Vela met with the Partera which is part of this indictment and she provided him with a declaration attesting that Defendant's two children, which are part of this indictment, were in fact born in the United States. Today, this *Partera* is dead. (See Appendix 7).

After the finding by the Texas Department of Health was issued, some time in the later part of 2001, Defendant then send a copy of this finding to immigration at the District Office in Harlingen. However, other than continue to receive his employment authorization and travel document from immigration each year, after he send this documents to immigration he heard nothing regarding the status of his application from immigration. Then since November of 2002, Defendant went to the Office of Congressmen Salomon Ortiz to see if his office could help him expedite his application to adjust status, which at that time had already been pending six years. Since that date,

Defendant has been in the Congressmen Office several times to inquire as to the status of his case. (See Appendix 8). As a matter of fact, at one time the Congressmen's Office mailed a copy of the finding by TDH to the Harlingen District Office.

In 2003, Defendant appeared in Harlingen for his second interview. At that time, he was told that everything in his case was complete. However, they could not give him Defendant his residence at that time because he was lacking some medical vaccinations. Defendant was asked to get this vaccination and submit it to them. Defendant did so, and since then he has continued waiting on his application.

## III.

## ARGUMENT

**A.    The Government has failed to Bring Mr. Mireles to Trial within the Requisite Seventy Days**

The right to a speedy trial is fundamental and constitutionally protected by the Sixth Amendment. Dogett v. U.S. 505 U.S. 647 (1992). In U.S. v MacDonald, 456 U.S. 1, 8 (1982), the Court held that the constitutional speedy trial protection of the Sixth Amendment does not attach before a defendant is "indicted, arrested, or otherwise officially accused." The Speedy Trial Act, 18 U.S.C. 3161-3174. codifies the right to a speedy trial guaranteed by the Sixth Amendment. See United States v. Gonzalez, 897 F.2d 1312, 1315 (5th. Cir. 1990). The Act requires a defendant's trial to "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before the judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. 3161(c)(1).

Defendant was arrested in Brownsville, Texas on September 29, 2005. The indictment against him was returned on November 22, 1983. Since November 22, 1983 Defendant has been openly entering and then later on living in the United States. Since 1996, after Defendant filed to change his

status to that of a Lawful Permanent Resident, Defendant has been living and working legally in the United States. Thus, Defendant has been waiting for trial for 22 years or approximately 7,610 days countable days from the date of the initial indictment, which is well beyond the limits permitted by the Act. Under these circumstances, the indictment must be dismissed. 18 U.S.C. 3162(a)(2); See United States v. Blackwell, 12 F.3d 44, 48 (5th Cir. 1994).

In *Dogett* the U.S. Supreme Court undertook a four part inquiry in evaluating the motion to dismiss: First, whether the delay before trial was uncommonly long; Secondly, whether the government or the defendant is more to blame for the delay; Thirdly, whether in due course, the Defendant asserted his right to speedy trial; and finally, whether Defendant suffered prejudice because of the delay. In this case, I believe it would be difficult to argue that 23 years is not uncommoly long. Also, that the government is more to blame for the delay since there is plenty of evidence that shows that the government knew or should have known of Defendant presence in the United States since the early 90's when he obtained his Texas Driver License and then proceeded to file for an application to adjust status. That is in addition to the fact that he was crossing on a daily basis to the United States with his border crossing card before this. Also, Defendant has asserted timely his right to speedy trial. Finally, and more importantly, due to the delays Defendant will be prejudice. Specifically, by waiting this many years Defendant will not able to bring forth as a witness the *partera* who allegedly conspired with him to obtain his children birth certificate. It is the understanding of Defendant that said *partera* died approximately two years ago. However, in 1999 that *partera* met with Defendant's attorney and stated in writing that she delivered Defendant's children in the United States.

**B.      The Indictment should be Dismissed with Prejudice.**

The Act Sets forth the following non-exclusive factors to be considered by the court in deciding whether to dismiss the indictment with prejudice. Most significant is the Supreme Court's recognition that a "pattern of neglect by the local" U.S. authorities is a highly relevant factor in determining whether to dismiss with prejudice that may tip the balance in favor of dismissal with prejudice. See United States v. Taylor, 487 U.S. 326, 339 (1988).

In this case, the government has inexcusably delayed Defendant case for more than 22 years. As mentioned above during this time, Defendant was openly living and working most of this time in the United States. Had the United States prosecuted Defendant in a timely basis, Defendant would have had the opportunity of being in a better position of defending his case. When things were still recent, and witnesses were still available. Specially, now that the *partera*, who according to the indictment allegedly conspired with him to fraudulently register the birth of his two older children, is dead.

For the above reasons, Defendant respectfully requests that this Court grant this motion and dismiss the indictment against him with prejudice.

Respectfully submitted,

**JAIME DIEZ**
JONES & CRANE
PO BOX 3070
BROWNSVILLE, TX. 78523
(956) 544-3565
(956) 969-0118 Facsimile

By: _____
JAIME DIEZ
State Bar No. 00783966
Fed. Bar No. 23118

*Attorney for Defendant*
HUMBERTO MIRELES

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the _____TH day of OCTOBER, 2005 a true and correct copy of the foregoing Motion has been forwarded to, Assistant United States Attorney, 600 East Harrison, Brownsville, Texas 78520.

_____
JAIME DIEZ